IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BABAK DJOURABCHI, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-810 (RCL) |
| | ) | |
| HARRY J. SELF, JR., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN REPLY TO DEFENDANTS' OPPOSITION TO
<u>PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM</u>**

COME NOW, Plaintiffs Babak Djourabchi and Monica Welt, by counsel, pursuant to Fed. R. Civ. P. 5 and 6 and Local Rule 7, and for their Reply to Defendants'[1] Memorandum of Points of Authority in Response ("Opposition") to Plaintiffs' Motion to Dismiss Counterclaim ("Motion"), state as follows:

**ARGUMENT**

I. **Neither Defendants' Allegation of Harsh Results, Nor Misrepresentation of their Contractor Status, Prevents the Strict Application of the District of Columbia's Home Improvement Contractor Law to Render their Contract Void and Unenforceable, Bar Them from Any Recovery in Contract or Quasi-Contract, and Necessitate the Dismissal of their Counterclaim.**

Neither of Defendants' arguments for avoiding the strict application of the District of Columbia's home improvement contractor law, and the resultant dismissal of their Counterclaim, provides any valid basis for the denial of Plaintiffs' Motion to Dismiss.

---

[1] According to its title and preamble, the Opposition is brought solely by Defendant Self Construction, Inc., as Defendants have moved for the dismissal of Defendant Harry J. Self, Jr. Nonetheless, given the pendency of that motion, Plaintiffs shall treat the Opposition herein as if brought by both Defendants.

Defendants argue that the dismissal of their Counterclaim, necessitated under a strict application of the District of Columbia's home improvement contractor law would be too harsh. However, as this same contention has been repeatedly addressed – and rejected – by District of Columbia courts, the argument has no merit. Defendants contend that the voiding of their contract and dismissal of their Counterclaim is too harsh a penalty for their violation of the District of Columbia's law against unlicensed home improvement contractors, and would somehow constitute an injustice or perversion of the District's regulatory scheme. *See* Opposition, p.3. However, in rejecting a similar claim by another unlicensed home improvement contractor in Cevern, Inc. v. Ferbish, 666 A.2d 17, 20 (D.C. 1995), the District of Columbia Court of Appeals noted:

> In some, even most, of these [unlicensed home improvement contractor] cases, we have been met with the plea . . . that the nullification of a contract effected by receipt of advance payments alone is harsh and disproportionate, resulting in a windfall to consumers who received good value for their money and then were allowed to keep the money anyway. Our response uniformly has been rejection of this appeal, primarily for two reasons: first, because compliance with the licensing requirement by a qualified contractor is a simple administrative matter; and second, because anything but an unyielding rule would put temptation in the way of unqualified (and unscrupulous) contractors and invite recurrence of the same abuses that underlay enactment of the regulatory scheme. In short, potential unfair applications of the rule at the margins have not persuaded us to sacrifice the benefits of a clear-cut, unmistakable requirement, with equally clear consequences for noncompliance, in this area of consumer protection.

(Citations omitted). Accordingly, Defendants are not entitled to a denial of Plaintiffs' Motion on the grounds that the dismissal of their Counterclaim is a harsh or disproportionate penalty for their violation of the District of Columbia's home improvement contractor law.

Defendants also gain no ground with their scurrilous allegations that Plaintiffs were "versed" in the District's prohibition against unlicensed home improvement contractors and "intended to violate" it or "use [it] to their advantage in using unlicensed contractors."

Opposition, p. 3. Even if such outrageous accusations merited this Court's consideration, well-settled District of Columbia precedent abolishes any safe harbor for violators of the District of Columbia law against unlicensed home improvement contractors, like Defendants, to maintain claims against homeowners like Plaintiffs. In Billes v. Bailey, 555 A.2d 460, 462 (D.C. 1989), the District of Columbia Court Appeals acknowledged that the homeowner was a former home improvement contractor and, thus, "was no doubt familiar with the licensing rules, and might take advantage of [the defendant's] vulnerable position as an unlicensed contractor." However, the Court still strictly enforced the District's law against unlicensed home improvement work:

> Nevertheless, we must pay deference to the legislature's intentional exposure of unlicensed contractors, which discourages unlicensed work and thereby protects the consumer. Where the regulation was enacted to protect the consumer, its purpose is better effectuated in this instance by denying relief to the home improvement contractor.

*Id*.

Moreover, in Nixon v. Hansford, 584 A.2d 597, 598 (D.C. 1990), although the trial court had declined to enforce the District's law against an unlicensed home improvement contractor because the homeowner "was well aware that [the contractor] did not have a license to perform home improvement work," the Court of Appeals overturned the lower court, holding that "we are constrained by precedent to disagree with the trial judge that the law must recognize an exception to the regulation under [such] circumstances." Therefore, even if Defendants' opprobrious allegations were accurate, which they are not, Defendants face a strict application of the District of Columbia's home improvement contractor law, pursuant to which their contract is void and unenforceable, they are barred from any recovery in contract or quasi-contract, and their Counterclaim must be dismissed.

Additionally, Defendants' make the astonishing contention that the home improvement general contractor on the project at issue in this matter (the "Project") was not Defendants, but rather Plaintiffs themselves or a separate contractor allegedly hired by them. Though their Opposition is quite muddled and hard to follow, Defendants appear to allege either that: (a) Plaintiffs' contractual responsibility for zoning permit fees, licensing, and inspections somehow transformed Plaintiffs from the Project's owners into its home improvement general contractor; or (b) a separate contractor allegedly hired by Plaintiffs, pursuant to the contract's "Separate Contracts" provision, solely to secure permits for construction (hereinafter, the "separate contractor"), was the real home improvement general contractor for the Project. *See* Opposition, p.2. Moreover, Defendants make the astounding allegation that they were merely subcontractors on the Project and "did not intend to be seen as the general contractor on the job." *Id*.

There are several fatal flaws with these contentions. *First*, Defendants' assertion that they were not the Project's home improvement general contractor is plainly fallacious. The document which Defendants attached to their Counterclaim as Exhibit 4, and which Defendants allege is the parties' contract,[2] expressly states that:

- Plaintiffs are the "OWNER" and Defendants the "CONTRACTOR" for the Project (Counterclaim, Exh.4, p.1, Preamble);

- Defendants are a "general contracting business" (*Id*.);

- Defendants attest that they are "licensed as a general contractor in the District of Columbia, and will maintain such during the entire duration of the construction" (*Id*., ¶ 4);

- Defendants shall provide proof of "licensing for working as a general contractor in the District of Columbia before commencing construction" (*Id*.); and

---

[2] Plaintiffs do not admit that the document attached to Defendants' Counterclaim as Exhibit 4 is a true and accurate copy of the parties' Agreement. However, the language of the document cited herein does accurately reflect the language of the parties' contract.

- "the direction and supervision of the working force including all subcontractors, or any person or entity that has direct contact with [Defendants] to perform a portion of the work at the site, rests exclusively with" Defendants (*Id*., p.2, ¶ 7).

Moreover, by asserting that the alleged "separate contractor" was retained by Plaintiffs pursuant to the contract's "Separate Contracts" provision, Defendants admit that *they* did not contract with, and thus were not a subcontractor to, this alleged "separate contractor." Accordingly, Defendants' allegations in their Opposition that they were subcontractors and were not, and did not intend to be seen as, the Project's home improvement general contractor are knowingly false, merit no consideration by the Court, and do not provide any basis for the denial of Plaintiffs' Motion.

*Second*, the duties allegedly borne by Plaintiffs and their alleged "separate contractor" did not make any of them the home improvement general contractor for the Project. Any alleged contractual responsibility of Plaintiffs for zoning permit fees, licensing, and/or inspections would have been the responsibility of Plaintiffs acting only as the owners of the Project, not as a contractor thereon. Such limited responsibility is quite typically borne by construction project owners, like Plaintiffs, who are better able to pay fees and obtain licenses and inspections required by law than are contractors. The mere assignment of these and other responsibilities to Plaintiffs as Project owners in the parties' contract would not, as Defendants allege, transform Plaintiffs into the Project's home improvement general contractor.

Similarly, Defendants themselves allege that the alleged "separate contractor" had only one responsibility: to secure permits for construction. This hardly supports Defendants' contention that such alleged "separate contractor" was the Project's home improvement general contractor. To the contrary, such a narrow responsibility only further demonstrates that the

alleged "separate contractor" was, in fact, not the Project's home improvement general contractor as Defendants contend.

*Third*, even if Defendants were not the general contractor on the Project, they still would not be able to avoid the strict application of the District of Columbia's prohibition against unlicensed home improvement contractors. Title 16, Chapter 8 of the District of Columbia Municipal Regulations expressly defines a "home improvement contractor" as any person or entity that "enters, or offers to enter, into a home improvement contract with *a homeowner*." 16 DCMR § 899.1 (2006)(emphasis added). Defendants cannot and do not allege that Plaintiffs, with whom they entered into their home improvement contract, are not the owners of the home whose improvement was the subject of the contract. Therefore, regardless of whether they were a subcontractor or a general contractor on the Project, Defendants were home improvement contractors under District of Columbia law.

Accordingly, because they required and accepted advance payment for home improvement work in the District of Columbia without being licensed by the District as home improvement contractors, Defendants' contract is void and unenforceable, they are not entitled to any recovery from Plaintiffs, even on a quasi-contractual basis, under District of Columbia law, and their Counterclaim should be dismissed.

## II. Defendants' Misrepresentation of District of Columbia Law Concerning Foreign Corporations, as Well as The Nature of Their Own Counterclaim, Provides No Basis for Maintaining Their Counterclaim Against Plaintiffs.

As detailed in Plaintiff's Motion, District of Columbia law expressly bars a foreign corporation that transacts business in the District without having a certificate of authority from the District to do business therein from maintaining an action at law or in equity in any court in the District, including federal courts located therein. *See* D.C. Code Ann. § 29-101.119(a)

(2001); Telephone Data Systems v. American Cellular Network Corp., 966 F.2d 696, 699 (D.C. Cir. 1992); Jane Lyons Adver. v. Cook, 47 U.S.P.Q.2d (BNA) 1113 (D.D.C. 1998); ILC Corp. v. Latino Newspaper, Inc., 747 F. Supp. 85, 87 (D.D.C. 1990).  Hoping to avoid this clear prohibition of Defendant Self Construction, Inc.'s ("Self Construction") action against Plaintiffs in the Counterclaim, Defendants resort in their Opposition to misrepresenting provisions of the District of Columbia Code, as well as the nature of their own Counterclaim.

*First*, Defendants erroneously allege that the reference in D.C. Code Ann. § 29-101.99(b)[3] to foreign corporations not needing to procure a certificate of authority from the District merely for the prosecution of litigation somehow preserves their right to maintain Self Construction's claim.  Opposition, p.4.  To the contrary, that provision merely clarifies that foreign corporations ***not*** transacting business in the District of Columbia need not obtain a certificate of authority solely for the purpose of coming into the District to bring an action in a court in the District.  *See* Stock 'In S.A. v. Swissco, Inc., 748 F. Supp. 23, 27-28 (D.D.C. 1990)(interpreting this provision, then-codified as D.C. Code Ann. § 29-399(b), not to require party not transacting business in the District to obtain a certificate).  But that circumstance is wholly inapplicable to Defendants and their Counterclaim.  Self Construction ***did*** transact business in the District of Columbia without a certificate of authority.  In fact, by the Counterclaim, Self Construction seeks to maintain an action against Plaintiffs in a court in the District arising from just such unauthorized transaction of business.  Unfortunately for Defendants, D.C. Code Ann. § 29-101.119(a) expressly bars the maintenance of Self Construction's action, and, accordingly, it should be dismissed.

---

[3] Defendants mis-cite this provision as Subsection (a) of D.C. Code Ann. § 29-101.99.

*Second*, Defendants incorrectly contend that D.C. Code Ann. § 29-101.119(b)'s provision that foreign corporations need not procure a certificate of authority in order to defend against a lawsuit in a court in the District also somehow preserves Self Construction's right to maintain its Counterclaim.  Opposition, p.4.  In order to attempt to shoehorn Self Construction's claim into this provision, Defendants are forced to misrepresent the nature of their Counterclaim as "part of [their] defense of the Plaintiff's [sic] claim," rather than what it truly is, an affirmative action against Plaintiffs.  *Id*.  This flawed argument is undermined even further by Defendants' own Opposition: in its preamble, Defendants expressly state that "*[t]he counter claims* [sic] is a diversity breach of contract and equitable *action*" against Plaintiffs.  *Id*., p.1 (emphasis added).  Thus, Defendants themselves acknowledge that the Counterclaim is an affirmative action by Defendants against Plaintiffs and not a defense against Plaintiffs' claims.  Therefore, D.C. Code Ann. § 29-101.119(b) does not preserve Self Construction's right to maintain its Counterclaim against Plaintiffs, and it should be dismissed as expressly barred by § 29-101.119(a).

### III. Defendants' Opposition Does Nothing to Cure their Counterclaim's Failure to State a Cause of Action for Either Breach of Contract or Promissory Estoppel,[4] and Thus the Counterclaim Should Be Dismissed.

For their response to Plaintiff's Motion to dismiss the breach of contract count of their Counterclaim for failure to state a cause of action, Defendants merely summarize and re-state the allegations already contained in their Counterclaim, and present no basis for finding that their breach of contract count states a valid cause of action.  In fact, Defendants expressly acknowledge this with the conclusory assertion that "[Defendants'] argument for breach of contract is based on the facts alleged in [Defendants'] counter-complaint [sic]."  Opposition, p.5.

---

[4] As stated in the Motion, while District of Columbia law recognizes a cause of action for promissory estoppel, it does not recognize a separate cause of action for "detrimental reliance," which is a combination of two elements of promissory estoppel.  Accordingly, as in its Motion, Plaintiffs refers herein to the second count of Defendants' Counterclaim solely as a claim for promissory estoppel.

As detailed in Plaintiffs' Motion, however, the allegations of Defendants' Counterclaim fail to state a valid cause of action against Plaintiffs for breach of contract.  Accordingly, the breach of contract count of Defendants' Counterclaim should be dismissed.

As for the promissory estoppel count of their Counterclaim, in the hope of preserving that claim, Defendants attempt to assert new allegations in their Opposition that are not found in the Counterclaim.  This gambit fails, however, because a motion to dismiss, like Plaintiff's Motion, tests the legal sufficiency of the allegations found solely within a complaint, like Defendants' Counterclaim. *See*, *e.g.*, Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  Nonetheless, Defendants make novel allegations in their Opposition which were not pled in the Counterclaim, namely, Defendants' alleged forbearance from a right and Plaintiffs' alleged promise to pay Defendants for such forbearance.  *See* Opposition, p.6.  However, such allegations are of no consequence to this Court's consideration of Plaintiffs' Motion and evaluation of the legal sufficiency of Defendants' Counterclaim, as allegations not made in the Counterclaim do not serve to protect the Counterclaim from dismissal for failure to state a legally-sufficient cause of action.  Accordingly, for the reasons set forth in the Motion and herein, Defendant's failure to state a cause of action begs the complete dismissal of their Counterclaim.

WHEREFORE, Plaintiffs Babak Djourabchi and Monica Welt respectfully request that this Honorable Court issue an Order dismissing with prejudice Defendants' Counterclaim in this action and awarding Plaintiffs their costs and attorneys' fees in responding thereto and to Defendants' opposition to Plaintiffs' Motion to Dismiss the Counterclaim, and grant such further relief in favor of Plaintiffs as this Court deems just and proper.

        Respectfully submitted,

        BABAK DJOURABCHI and
        MONICA WELT

        By Counsel

/s/ Stephen W. Smith
Gerald I. Katz, D.C. Bar No. 237925
Stephen W. Smith, D.C. Bar No. 463900
KATZ & STONE, L.L.P.
8230 Leesburg Pike, Suite 600
Vienna, Virginia 22182
(703) 761-3000
(703) 761-6179 (fax)
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that copies of the foregoing **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM** was electronically filed with the Clerk of the Court using the CM/ECF system this 21st day of July, 2006, which will send a notice of electronic filing to the following:

        Reginald M. Sealey, Esquire
        The Law Offices of Reginald M. Sealey
        Harold L. Boyd, III
        The Boyd Law Firm
        6231 Crain Hwy, SE
        Upper Marlboro, Maryland 20772
        *Counsel for Defendants*

        /s/ Stephen W. Smith
        Stephen W. Smith

J:\04400.003\Pld\By Clients\Motion to Dismiss Counterclaim\007sws MotionToDismissReply.doc:bd