**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **BABAK DJOURABCHI**, *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 06-810 (RCL)** |
| | ) |
| **HARRY J. SELF, JR.,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

_____)

## MEMORANDUM OPINION

Now before the Court comes plaintiffs' Motion [53] for summary judgment on counts II and III of their Amended Complaint [23] directed against defendant, Harry J. Self.  Plaintiffs Babak Djourabchi and Monica Welt, District of Columbia residents, filed their three-count Amended Complaint [23] in this Court on December 27, 2006, seeking judgment in the amount of at least $2,097,548.66 against defendant Harry J. Self, Jr., a resident of Maryland. Defendant, acting as the director and trustee of a defunct Maryland corporation, Self Construction, Inc. ("Self Construction"), answered [30] on February 6, 2007. (Am. Compl. ¶¶ 1-5.)

Jurisdiction is proper under 28 U.S.C. § 1332(a) and venue lies in this district under 28 U.S.C. § 1391(a)(2).  Before the Court is plaintiffs' Motion for Summary Judgment for Counts II and III of their Amended Complaint.  Upon full consideration of the motion, opposition brief, reply brief, the entire record, and applicable law, the Court finds that the Motion [53] for summary judgment will be GRANTED.

# I. <u>Factual Background</u>

Plaintiffs' claims arise out of a home improvement contract entered into with defendants on May 13, 2005 ("Agreement"), and a subsequent Addendum signed on July 30, 2005, providing for certain work to be performed by Mr. Self and Self Construction on plaintiffs' residence. (Am. Compl. ¶¶ 6-16.)  Plaintiffs allege that defendant breached the Agreement and Addendum by failing to perform and complete work in a timely and workmanlike manner, refusing to compensate plaintiffs for damages and costs, and by failing to be licensed to perform work in the District of Columbia as a general contractor. (Am. Compl. ¶¶ 17-19.)  Plaintiffs further allege that defendant committed an unfair trade practice in violation of the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3904, by accepting advance payments from plaintiffs as a requirement to perform home improvement services without being licensed. (Am. Compl. ¶¶ 20-24.)  Finally, plaintiffs allege that defendant fraudulently misrepresented his status as a licensed home improvement contractor within the District of Columbia. (Am. Compl. ¶¶ 25-31).

Defendant generally admits plaintiffs' allegations, but opposes plaintiffs' motion in so far as it seeks damages in excess of $66,599.00, the amount paid to defendant in advance of the work's completion. (Def.'s Opp'n [55] at 1.)  Defendant also alleges that plaintiffs' Motion [53] misquotes and misinterprets his opposition brief. (*See id*. at 2-4.)  In a sweeping manner, defendant claims that there remain issues of material facts.  Specifically, defendant claims that he made no fraudulent misrepresentations and that there exists an issue of the degree of damages owed. (*See id.* at 4-6.)

## II. <u>Analysis</u>

**A.**     **<u>Summary Judgment Standard</u>**

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment when the pleadings, affidavits, depositions, answers to interrogatories, and admissions of record demonstrate that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A disputed issue of material fact is genuine and, therefore, precludes summary judgment where the Court determines that a reasonable jury could find in favor of the non-moving party on that factual issue. *Anderson*, 477 U.S. at 248. However, even where a genuine issue exists as to some material fact, the movant is entitled to summary judgment against "a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As a general rule, when adjudicating a motion for summary judgment, the Court must "assume the truth of all statements proffered by the party opposing summary judgment" and construe all evidence in favor of the non-moving party. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). *See Anderson*, 477 U.S. at 255; *Carter v. Greenspan*, 304 F. Supp. 2d 13, 21 (D.D.C. 2004). Indeed, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). *See also Washington Post Co. v. United States Dep't of Health & Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).

However, "some statements are so conclusory as to come within an exception to" the general rule that the non-movant's statements must be fully credited when adjudicating a motion for summary judgment. *Greene*, 164 F.3d at 675 (citing as examples *Delange v. Dutra Constr. Co.*, 153 F.3d 1055, 1058 (9th Cir. 1998); *Lefkowitz v. Citi-Equity Group, Inc.*, 146 F.3d 233, 240 (5th Cir. 1998)). Thus "wholly conclusory statements for which no supporting evidence is offered" need not be taken as true for summary judgment purposes. *Carter*, 304 F. Supp. 2d at 21 (citing *Greene*, 164 F.3d at 674–75).

In order to survive a motion for summary judgment, the non-moving party must establish more than the "mere existence of a scintilla of evidence" in support of its claims. *Anderson*, 477 U.S. at 252. In order to prevail, the non-movant's opposition must contain more than "unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial." *Carter*, 304 F. Supp. 2d at 21. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. In fact, summary judgment may issue where the movant points to a substantial lack of evidence in the non-movant's case; *see Celotex,* 477 U.S. at 322; or where the movant demonstrates that the non-movant has failed to proffer "evidence on which the jury could reasonably find for" the non-moving party. *Anderson*, 477 U.S. at 252.

**B.**     **Plaintiffs' Motion for Summary Judgment for Defendant's Alleged Violations of D.C. Code Ann. §§28-3901, *et seq*. will be GRANTED.**

Plaintiffs seek summary judgment on Count II of their Amended Complaint. Count II alleges the defendant committed an unfair trade practice when he accepted advance payments

from plaintiffs in violation of the District of Columbia Consumer Protection Act (D.C. Code Ann. §§28-3901, *et seq*.). (Pls.' Mot. [56] at 2.)  To prove a violation of the Act, plaintiffs must show: (1) that a home improvement contract for a residential property existed between defendant and plaintiffs; (2) the contract was for at least $300.00; (3) pursuant to the contract, defendant required or accepted payment in advance of the full completion of all work required; (4) and, defendant was not licensed in the District of Columbia as a home improvement contractor. *See Calson Constr. Co, Inc. v. Dupont W. Condo., Inc.*, 932 A.2d 1132, 1134-1135 (D.C. Ct. App. 2007) (*citing* D.C. MUN. REGS. tit. 16, § 800.1; D.C. MUN. REGS. tit. 16, § 899; *Nixon v. Hansford*, 584 A.2d 597, 599 (D.C. Ct. App. 1991)).

## 1.      A Contract With a Price Greater Than $300 Existed Between Plaintiffs and the Defendant.

Neither party denies that a contract existed between the parties. (*See* Pls.' Am. Compl. [23] ¶¶ 6-7; Def.'s Answer [30] ¶¶ 6-7.)  The contract between plaintiffs and defendant was signed on May 13, 2005.  According to the contract, defendant agreed to perform work on the plaintiffs' residence including, renovation of the basement unit, adding a full addition to the second and third floors, and construction of a new garage. (*See* Pls.' Ex. B [53-2] at 4-6.)  The contract was to be completed within a period of seven months for $212,212.00. (Pls.' Am. Compl. [23] ¶ 6; Def.'s Answer [30] ¶ 6.)

In addition to the original agreement, the parties entered into an addendum on July 30, 2005.  Under the Addendum, defendant agreed to perform additional underpinning work on the plaintiffs' basement, in exchange for an increase of the total contract price to $216,211.00 and an extension of the contract duration to March 1, 2006. (Pls.' Am. Compl. [23] ¶ 7; Def.'s Answer

[30] ¶ 7.)  Because there are no disputed facts concerning the contract, the Court finds that the

contract between plaintiffs and the defendant did exist and exceeded the threshold price of three

hundred dollars.

      **2.**      **Defendant Accepted Payment in Advance of Full Completion of Work
Agreed Upon in the Contract.**

The plaintiffs and defendant both agree that the plaintiffs paid defendant a down-payment

of $20,000 before work on the plaintiffs' residence was completed. (Pls.' Am. Compl. [23] ¶ 9;

Def.'s Answer [30] ¶ 9.)  In fact, before defendant had completed construction on the plaintiffs'

residence, plaintiffs paid a total sum of $66,599.00.  Plaintiffs paid defendant $20,000 on May

13, 2005, May 28, 2005, and August 7, 2005; $2,600 on June 28, 2005; and $3,999 on July 30,

2005. (Pls.' Am. Compl. [23] ¶ 9; Def.'s Answer [30] ¶ 9.)  Because both parties agree on the

amount plaintiffs paid the defendant before completion of the contract work, there is no genuine

issue of material fact.

      **3.**      **Defendant was not Licensed as a Home Improvement Contractor in the
District of Columbia**.

This Court has already found that the defendant was not licensed as a home improvement

contractor in the District of Columbia. (*See* Order [20] at 9.)  Further, the Court found the

defendant knew that he lacked the required home improvement contractor license. (*Id*.) ("With

respect to Self Construction and Mr. Self individually, therefore, the Court will deem admitted

plaintiffs' allegation that 'defendants' were not properly licensed.")  Furthermore, by the

defendant's own admission, he was not licensed in the District of Columbia at any time under the

contract. (Def.'s Answer ¶¶ 5, 15.)  As a defense, defendant claims that he thought it was the

plaintiffs' contractual obligation to obtain the necessary construction permits. (Self Aff. ¶ 9.)

("During our discussions . . . I told plaintiffs that I could not be responsible for obtaining the required permits as they had their own architect and engineer. Plaintiffs agreed to remove that provision . . . Plaintiff's [sic] architect and/or engineer obtained a demolition permit and I then performed the required demolition work.")  This defense is inadequate, because the regulation at issue states:

> No person shall require or accept any payment for a home improvement contract in advance of the full completion of all work required to be performed under the contract unless that person is licensed as a home improvement contractor or as a licensed salesperson employed by a licensed contractor in accordance with the provisions of this chapter.

D.C. MUN. REGS. tit. 16, § 800.1 (2008).  There is no exception within the statute for unlicensed contractors who are under the supervision of architects or engineers, and defendant cannot mitigate the licensing requirement of the statute by claiming mistake.  Because the defendant admits he was not licensed as a home improvement contractor in the District of Columbia, this Court finds no genuine issue of material facts relating to the defendant's license status.

In order to prove an unfair trade practice under D.C. Code Ann. § 28-3901, *et seq.*, plaintiffs need only establish that a home improvement contract for a residential property existed between defendant and plaintiffs; the contract was for at least $300; pursuant to the contract, defendant required or accepted payment in advance of the full completion of all work required; and defendant was not licensed in the District of Columbia as a home improvement contractor. *See Carlson*, 932 A.2d at 1134-35.

There is a long history of the strict application of the rule that "receipt of payment by an unlicensed contractor before completion of the work under the contract violates the home

7

improvement regulations and renders the contract void and unenforceable, even on a quasi-contractual basis." *Cevern, Inc. v. Ferbish*, 666 A.2d 17, 19-20 (D.C. Ct. App. 1995) (quoting *Capital Constr. Co. v. Plaza West Coop. Ass'n*, 604 A.2d 428, 429-30 (D.C. Ct. App. 1992). Furthermore, the unlicensed contractors are required to return all payments received irrespective of any work already completed. *See e.g., Marzullo v. Molineaux*, 651 A.2d 808, 809 & 810 n. 3 (D.C. Ct. App. 1994) ("[A]n unlicensed contractor who accepts payments under a home improvement contract prior to completion of the project loses all right to receive *or retain* any compensation for the work.").  Moreover, the *Cevern* court noted numerous decisions under District of Columbia law rejecting "any deviation from this rule spans more than a quarter-century."[1] *Cevern,* 666 A.2d at 20.

Strict enforcement of these terms has not waned in the 13 years since *Cevern*. *See, e.g.*, *Carlson Constr.*, 932 A.2d at 1137; *Authentic Home Improvements v. Mayo*, No. 90-05, 2006 WL 2687533, *3 (D.C. Super. Ct. June 2, 2006) ("[W]here an unlicensed contractor . . . violates the regulations by accepting payment before the completion of a construction project, then *any* moneys paid may be recovered from the contractor, and no *quantum meruit* may be awarded."); *Norried v. Caribbean Contractors, Inc.*, 899 A.2d 129, 135-36 (D.C. Ct. App. 2006) (reversing lower court's finding that unlicensed contractor could recover on counterclaims for services rendered on a contract, and remanding to allow recovery by homeowner for monies paid in advance of project completion).

---

[1]  *See Marzullo*, 651 A.2d at 809-10; *Nixon v. Hansford*, 584 A.2d 597, 598 (D.C. Ct. App. 1991); *Billes v. Bailey*, 555 A.2d 460, 462 (D.C. Ct. App. 1989); *Woodruff v. McConkey*, 524 A.2d 722, 724 n. 1 (D.C. Ct. App.1987); *Erwin v. Craft*, 452 A.2d 971, 972 (D.C. Ct. App. 1982) (per curiam); *Truitt v. Miller*, 407 A.2d 1073, 1078 (D.C. Ct. App. 1979); *Bathroom Design Inst. v. Parker*, 317 A.2d 526, 528 (D.C. 1974); *Miller v. Peoples Contractors, Ltd.*, 257 A.2d 476, 477- 78 (D.C. Ct. App. 1969).

After considering these four requirements, the Court has found no genuine issue of material fact.  Plaintiffs contend that summary judgment is appropriate where there is no factual disagreement.  Considering the District of Columbia's strict enforcement of this type of violation, plaintiffs contend that summary judgment in their favor is the appropriate resolution of this claim.  Courts considering similar questions have reached similar conclusions. *See e.g.*, *Capital Constr.,* 604 A.2d 428 (affirming summary judgment against an unlicensed home improvement contractor who accepted advance payment); *Carlson Constr.*, 932 A.2d at 1132 (affirming trial court's award on summary judgment that an unlicensed contractor must repay all money received even if work has already been performed).

The Court finds that there is no question of material fact in the present action regarding defendant's demand for, and acceptance of, payment from the Plaintiffs before the completion of the contracted work.  Defendant's signature accepting checks totaling $66,599.00 from the Plaintiffs as recorded on the log attached to the Agreement, and the cancelled checks with Defendant's endorsing signature, prove that Defendant received these pre-payments from the Plaintiffs. (*See* Djourabchi Aff. [53-3] at ¶¶ 9-12; Welt Aff. [53-4] at ¶¶ 9-12.)  Further, Defendant admits that he executed a home improvement contract with Plaintiffs and demanded and accepted pre-payment from Plaintiffs in violation of the D.C. Consumer Protection Act.  The Court finds no "evidence on which the jury could reasonably find for" the defendant. *Anderson*, 477 U.S. at 252.  Because there exist no genuine issue of material fact, the Court will GRANT the plaintiffs' Motion for Summary Judgment [53] with regard to Count II of their Amended Complaint [23].

**C.**   **Plaintiffs' Motion Summary Judgment for Defendant's Alleged Fraud will be GRANTED**

To prove fraud in the District of Columbia, a plaintiff must establish: (1) a false representation; (2) in reference to a material fact; (3) made with knowledge of its falsity; (4) with the intent to deceive; and (5) on which the plaintiff takes action relying on that representation. *See Railan v. Katyal*, 766 A.2d 998, 1009-10 (D.C. Ct. App. 2001) (citing *Dresser v. Sunderland Apartments Tenants Ass'n, Inc.*, 465 A.2d 835, 839 (D.C. Ct. App. 1983)); *see also Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*, 961 F. Supp. 305, 309 (D.D.C. 1997). The elements of fraud must be proven by clear and convincing evidence. *Railan*, 465 A.2d at 1009.

District of Columbia courts have demonstrated willingness to expand the meanings of these elements when appropriate situations are presented. For example, the requirement of knowledge of falsity may be met by a showing that the statements were "recklessly and positively made without knowledge of (their) truth." *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 706 (D.C. Ct. App. 1981) (*quoting McNabb v. Thomas*, 190 F.2d 608 (D.C. Cir. 1951)). Using this approach of appropriate flexibility, the court concludes that plaintiffs' Motion for Summary Judgment [53] concerning Count III of their Amended Complaint [23] shall be GRANTED.

**1.**   **Defendant Falsely Represented His Status as a Licensed Home Improvement Contractor.**

Plaintiffs allege that defendant falsely represented his status as a licensed home improvement contractor in the District of Columbia. (Pls.' Mot. [53] at 15.) The original contract, signed by the plaintiffs and defendant, states:

> CONTRACTOR shall provide OWNER and attach hereto both proof

10

> of liability insurance and licensing for working as a general contractor in the District of Columbia before commencing construction. By signing this contract CONTRACTOR further attests that he is insured . . . for work performed, *and licensed as a general contractor in the District of Columbia, and will maintain such during the entire duration of the construction.*

(Pls.' Mot. [53-2] at 4.) (emphasis added)  Defendant did in fact sign this contract. (*Id*. at 6.)  But this is a false representation as defendant was not licensed in the District of Columbia. (Def.'s Answer ¶¶ 5, 15.)  Therefore, there is no genuine issue of material fact as to whether the defendant falsely represented himself as a licensed home improvement contractor in the District of Columbia, as evidenced by the signed contract which affirmatively states that defendant is licensed. (Pls.' Mot. [53-2] at 6.)

### 2.       Defendant's Status as a Licensed Home Improvement Contractor is a Material Fact.

"[A] representation is material if it reasonably influences a plaintiff to take an action he or she may have refrained from taking if aware of the actual facts." *C&E Servs. Inc. v. Ashland, Inc.,* 498 F. Supp. 2d 242, 258 (D.D.C. 2007) (*citing High v. McLean Fin. Corp.*, 659 F. Supp. 1561, 1567 (D.D.C. 1987).  Defendant's own exhibit agrees he affirmatively stated in writing to the plaintiffs that he was "licensed as a general contractor in the District of Columbia." (Self Aff. [55-2] ¶¶ 10-12.) ("On May 13, 2005, I signed the Building Construction Agreement that was attached to plaintiffs' Motion for Summary Judgment as Exhibit B.")  The contract between the plaintiffs and the defendant was for home improvement and renovation work in the District of Columbia. (Pls.' Mot. [53-2] at 4.)  In order to enter into the contract, it required that the defendant be licensed. (*Id*.)  The plaintiffs would only contract with a licensed home improvement contractor. (Djourabchi Aff. [53-3] ¶15.)  Because the contract required the

11

contractor to be licensed, the plaintiffs would not have hired the defendant if he was unlicensed. (*Id*.)  Because the plaintiffs would not have hired the defendant if they knew he was unlicensed and that having a license was a term of the contract defendant signed, the defendant's status as a licensed home improvement contractor is a material fact.

### 3. The Defendant Knew he was not Licensed in the District of Columbia as a Home Improvement Contractor.

Plaintiffs point out that defendant was not licensed, and defendant agrees. (Def.'s Answer [30] ¶¶ 5, 15.)  Defendant responds that he "believed [he] operated under the supervision of a licensed Contractor." (Def.'s Opp. [14] at 2.)  Further, defendant acknowledged that he had only a Maryland license while he worked on the plaintiffs' home. (Self Aff. [55-2] ¶ 11.) ("During my discussions with plaintiffs I showed them my existing Maryland license . . . I believed it to be valid and in full effect.")  Defendant argued that with his Maryland license he could work within the District of Columbia once he obtained an insurance endorsement. (*Id*.) ("I believed and understood that with my valid Maryland license, once the District of Columbia permits were received, I could obtain a simple insurance endorsement that would enable me to perform home improvement work in the District of Columbia.")  But, while the defendant worked on the plaintiffs' home, he did not obtain or attempt to obtain this endorsement until after he had finished working on plaintiffs' home. (*Id*.) ("I did not learn that my Maryland license had lapsed until well after my work on plaintiffs' home had ended.")

The D.C. Consumer Protection Procedures Act provides that "[i]t shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for *any person* to: . . . (dd) violate any provision of title 16 of the District of Columbia Municipal

12

Regulations." D.C. Code § 28-3904(dd) (2008) (emphasis added). Under the Municipal

Regulations, "[*n*]*o person* shall require or accept any payment for a home improvement contract

in advance of the full completion of all work required to be performed under the contract, unless

*that person* is licensed as a home improvement contractor." D.C. MUN. REGS. tit. 16, § 800.1

(2006) (emphasis added). This provision is strictly applied and results in voiding the contract

and rendering it unenforceable. *Cevern*, 666 A.2d at 19-20.

Exhibit 4 of defendant's counterclaim, the purported Agreement, states that "Harry Self,

as sole proprietor of Self Construction, a general contracting business" (Def.'s Opp. [14] Ex. 4,

preamble), "attests that he is . . . licensed as a general contractor in the District of Columbia, and

will maintain such during the entire duration of the construction." (*Id.* at ¶ 4.) (*See also* Pls.'

Mot. [53-2] at 4.) In his answer, defendant stated that he is "without knowledge or information

sufficient to form a belief as to the truth of" plaintiffs' allegation that he lacked a license to

perform work as a general contractor in the District. (Def.'s Answer [6] ¶ 16.) Such an answer

generally has the effect of a denial. FED. R. CIV. P. 8(b).

But, "the requirement of knowledge of the falsity may be met by a showing that the

statements were 'recklessly and positively made without knowledge of their truth.'" *Armstrong*,

961 F. Supp. at 309 (quoting *Howard*, 432 A.2d at 706). Also, a party "may not deny sufficient

information or knowledge with impunity, but is subject to the requirements of honesty in

pleading. An averment will be deemed admitted when the matter is obviously one as to which a

defendant has knowledge or information." *David v. Crompton & Knowles Corp.*, 58 F.R.D. 444,

446 (E.D. Pa. 1973) (internal citation omitted). Moreover, a party "may be held to the duty to

exert reasonable effort to obtain knowledge of a fact." *Greenbaum v. United States*, 360 F. Supp.

13

784, 787 (E.D. Pa. 1973).  In this case, defendant, as sole proprietor of Self Corporation, should know whether his corporation or he himself was properly licensed as a home improvement contractor in the District of Columbia.

Defendant's argument that he "believed [he] operated under the supervision of a licensed Contractor" (Def.'s Opp. [14] at 2), whose identity defendant does not specify, only lends support to the inference that defendant knew he in fact had no license.  Furthermore, even if the defendant believed that he operated under the supervision of another licensed contractor hired by the plaintiffs, that belief would not shield the defendant from liability.  The regulation at issue is not limited to general contractors, but provides that "[*n*]*o person* shall require or accept any payment for a home improvement contract in advance of the full completion of all work . . . ." D.C. Mun. Regs. tit. 16, § 800.1 (2006) (emphasis added).  Therefore the Court finds that defendant knew he was not licensed in the District of Columbia as a home improvement contractor.

### 4.    Defendant Intended to Deceive Plaintiffs

Intent to deceive can be implied from the fact that the defendant made an affirmative statement that he knew to be false. *Nader v. Allegheny Airlines, Inc.*, 512 F.2d 527, 547 (D.D.C. 1975), *rev'd on other grounds*, 426 U.S. 290 (1976).  *See also Gen. Elec. Capital Corp. v. Acosta*, 406 F.3d 367, 372 (5th Cir. 2005) ("An intent to deceive may be inferred from 'reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation'") (citations omitted).  Here the defendant made an affirmative statement to plaintiffs that he was a licensed home improvement contractor in the District of Columbia; a statement he knew to be false. (*See* Pls.' Ex. B [53-2] at 4-6.)

14

Therefore, no reasonable fact-finder could that the defendant's misrepresentations were not intended to deceive the plaintiffs.  Being a home improvement contractor licensed in the District of Columbia was a stated, material condition of the contract; yet defendant affirmatively and falsely stated in writing that he was licensed (*Id*.)  These statements made by the defendant, recklessly and affirmatively with knowledge of their falsehood, imply the defendant's intent to deceive the plaintiffs.

**5.      The Plaintiffs Acted in Reliance of the Defendant's False Representations.**

Without a District of Columbia license the plaintiffs would have hired another home improvement contractor (*See* Djourabchi Aff. [53-3] at ¶ 15; Welt Aff. [53-4] at ¶ 15.)  As set forth in plaintiffs' affidavits, they visited defendant's other construction projects in the District of Columbia and reasonably relied on defendant's affirmative representation that he was a licensed home improvement contractor. (*Id*.)  Having a District of Columbia license was a material condition explicitly stated in the plaintiffs' contract with defendant. (*See* Pls.' Ex. B [53-2] at 4-6.)  Plaintiffs would not have entered into this contract if they knew that the defendant was not licensed in the District of Columbia. (*See* Djourabchi Aff. [53-3] at ¶ 15; Welt Aff. [53-4] at ¶ 15.)  The Court finds that that the plaintiffs reasonably relied to their detriment on the defendant's false representation that he was a licensed home improvement contractor in the District of Columbia.

Summary judgment is an appropriate outcome where, after reviewing the pleadings, affidavits, depositions, and admissions of the record, no genuine issues of material fact are demonstrated.  Furthermore, summary judgment on fraud is appropriate where a defendant admits to making affirmative statements known to be false, that are material to a commercial

contract. *See United States v. Spicer*, 57 F.3d 1152 (D.C. Cir. 1995) (affirming the grant of summary judgment on the fraud counts, where defendant admitted to making affirmative misrepresentations regarding buyers' down-payments to induce HUD to approve otherwise non-qualifying parties, because a rational fact finder could only conclude from the undisputed facts that defendant's misrepresentations did indeed proximately cause HUD's losses).

The Court finds that the plaintiffs have satisfied all requirements of a fraud count.  The plaintiffs have shown by clear and convincing evidence that the defendant (1) made a false representation; (2) in reference to a material fact; (3) made with knowledge of its falsity; (4) with the intent to deceive; and (5) on which the plaintiff takes action relying on that representation. The Court finds no "evidence on which the jury could reasonably find for" the defendant. *Anderson*, 477 U.S. at 252; *See also Celotex*, 477 U.S. at 322.  Because the Court finds that there exist no genuine issues of material fact, the Court will GRANT the plaintiffs' Motion for Summary Judgment [53] with regard to Count III of their Amended Complaint [23].

**D.**     **Damages Owed by the Defendant to the Plaintiffs**

The defendant argues that there still remain issues of fact regarding damages which preclude summary judgment, but questions of degree of damage are immaterial to either of plaintiffs' summary judgment claims.  Neither the District of Columbia Consumer Protection Procedures Act, nor fraud, contemplates degree of damages as an element of the claim. *See* D.C. Code § 28-3904 (2008); *Railan*, 766 A.2d at 1009-1010.  Therefore, even though the question of degree has not yet been decided, finding summary judgment in favor of the plaintiffs is not precluded by the existence of that question.

According to the District of Columbia Code, plaintiffs may request the following

16

remedies: treble damages; reasonable attorney fees; punitive damages; an injunction against the use of the unlawful trade practice; any other relief which the court deems proper. *See* D.C. Code § 28-3904(k)(1) (2008).  In their Motion [53], plaintiffs have asked for attorney fees and costs, punitive damages, treble damages, pre and post-judgment interest, and any other relief which the Court sees necessary. (*See* Pls.' Mot. [53] at 2.)  The defendant has asked that the Court order the defendant to return only the $66,599 collected as advance payments. (*See* Def.'s Opp'n [55] at 1, 6.)  Clearly, the defendant must return to the plaintiffs the full balance of advance payments ($66,599) made by the plaintiffs to the defendant. *See, e.g.*, *Carlson Constr.*, 932 A.2d at 1137; *Authentic Home Improvements v. Mayo*, No. 90-05, 2006 WL 2687533 at *3; *Norried v. Caribbean Contractors, Inc.*, 899 A.2d at 135-36.  But the plaintiffs have asked for damages in excess of this amount.  In addition to $66,599, the Court, will consider the following damages:

### 1.     Plaintiffs' Request for Attorney Fees and Costs will be Granted

First, plaintiffs request the Court to consider their claim for attorneys' fees under D.C. Code § 28-3905(k)(1)(B).  Defendant requests that we deny this request pointing out that the plaintiffs have not provided support for their claims of attorney fees and costs.  However, it is not necessary for a party seeking attorney fees and costs to submit an accounting to the court before such fees are awarded. *See Marlyn Condo., Inc. v. McDowell,* 576 A.2d 1346 (D.C. Ct. App. 1990); *Trilon Plaza Co. v. Allstate Leasing Corp.,* 399 A.2d 34, 37 (D.C. Ct. App. 1979). Therefore, the Court will Grant the Plaintiffs' request for attorney fees and costs in an amount yet to be determined.

### 2.     Plaintiffs' Request for Punitive Damages will be Denied

Under District of Columbia law, the plaintiffs must be able to prove "outrageous conduct which is malicious, wanton, reckless, or in willful disregard for another's rights." *See Perry v. Frederick Inv. Corp.*, 509 F. Supp. 2d 11, 22 (D.D.C. 2007) (citing *Tolson v. District of Columbia,* 860 A.2d 336, 345 (D.C. Ct. App. 2004)).  To recover punitive damages, it is not enough to show that the defendant acted with intent. *See District Cablevision Ltd. P'ship v. Bassin*, A.2d 714, 726 (D.C. Ct. App. 2003).  Instead, the plaintiffs are charged with "[proving] ... by clear and convincing evidence that [defendant acted with] ... a state of mind evincing malice or its equivalent." *Daka, Inc. v. McCrae,* 839 A.2d 682, 695 n. 14 (D.C. Ct. App. 2003) (citing *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C. Ct. App. 1995)). Accordingly, plaintiffs are eligible for punitive damages under the D.C. Consumer Protection Procedures Act so long as there is "clear and convincing evidence that [defendant acted with] a state of mind evincing malice or its equivalent." *Id.*

This Court concludes that there is no clear and convincing evidence that the defendant acted with malice.  According to the well-pleaded allegations of the complaint, defendant led the plaintiffs to believe that he was a licensed home improvement contractor in the District of Columbia.  The plaintiffs had personal knowledge of defendant's past projects, and even visited another home renovation project that the defendant was overseeing. (Djourabchi Aff. [53-3] at ¶ 5; Welt Aff. [53-4] at ¶ 5.)  While the defendant violated District of Columbia law by accepting advance payments while he was an unlicensed contractor, the plaintiffs have not offered any evidence that would suggest the defendant acted with malice.  Moreover, when the District of Columbia Council enacted the Act, it contemplated the guidelines for administering punitive damages under the act: "[T]he standards the courts would use in determining [punitive damages

pursuant to D.C. Code § 28-3905(k)(1)(c) ] are the amount of actual damages awarded, the frequency, persistency, and degree of intention of the merchant's unlawful trade practice, and the number of consumers adversely affected." *Rowan Heating-Air Conditioning-Sheet Metal, Inc. v. Williams*, 580 A.2d 583 (D.C. Ct. App. 1990) (per curiam) (quoting COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMM. ON PUBLIC SERVICES & CONSUMER AFFAIRS, B. No. 1-187, at 23 (1975)).  Here, no evidence was offered by plaintiffs that defendant's acts would fall into the categories of violations contemplated by the District of Columbia Council which triggers liability for punitive damages.  Hence this court will deny the plaintiffs' request for punitive damages.

**3.    The Court will order Further Proceedings to Determine Treble Damages as well as Pre- and Post-Judgment Interest.**

The Court agrees with plaintiffs, that they have a right to trebled damages, but disagrees with their calculations.  Under the District of Columbia Consumer Protection Act, plaintiffs may recover three times the *actual damages* they suffered as a result of the defendant's conduct. *Bassin*, 828 A.2d at 730; *Cf. Williams v. First Gov't Mortgage & Investors Corp.*, 225 F.3d 738, 745 (2000) (holding in part that treble damages are available once actual damages are proven). Actual damages are defined as, "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses" BLACK'S LAW DICTIONARY 416 (8th ed. 2004).  Hence, the damage contemplated by the statute is not the total amount paid by plaintiffs to the defendant, but rather the amount of actual damage caused by the defendant's acts. Furthermore, these damages must "compensate for a proven injury or loss." *Id*.  In effect, the District of Columbia Consumer Protection Act, "entitles the plaintiffs to three times the actual

damages they suffered from [the defendant's] wrongful conduct." *Bassin*, 828 A.2d at 730.  As

an illustration, when a plaintiff is victimized by price-fixing, the trebled damages are not the

total price the plaintiff paid, but rather the amount of the overcharge is trebled. *See Burlington*

*Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 385 (4th Cir. 1982) ("Plaintiffs are entitled to

recover the overcharge stemming from the illegal combination-i.e., the difference between the

prices actually paid and the prices that would have been paid absent the conspiracy").  In another

similar situation, when an employee sued under the Fair Labor Standards Act to recover double

damages for being paid insufficient wages, the Second Circuit calculated the wages due and then

subtracted the wages that had been paid before applying the multiplier. *See Tran v. Alphonse*

*Hotel Corp.*, 281 F.3d 23, 35 (2d Cir. 2002).

This process of calculating trebled damages is also adhered to in the District of

Columbia. *See Byrd v. Jackson*, 902 A.2d 778, 782-783 (D.C. Ct. App. 2006).  In *Byrd*, the

plaintiff's damages, consisting of lost equity in her home as a result of the defendant's acts, was

trebled by the trial judge.  The Court of Appeals for the District of Columbia upheld the trial

court's trebling of actual damages. *Id*. ("The [trial] judge trebled the damages because Smith lost

$148,175.41 equity in her home when . . . [the defendant] obtained it.").  Consequently, the

plaintiffs are not due the trebled amount of their advance payments to the defendant

($199,797.00); instead, the proven amount of actual damage caused by the defendant will be

trebled.  The $66,599.00, paid by plaintiffs to the defendant, is simply not an adequate proof of

actual damages necessary to calculate trebled damages.  Therefore the Court will conduct further

proceedings to allow the parties to prepare evidentiary materials which will enable the Court to

determine the amount of trebled damages the defendant owes to the plaintiffs.

Likewise, as neither side has addressed pre- and post-judgment interest, further proceedings will be necessary on those questions.

### III. Conclusion

Upon full consideration of the parties' filings, applicable law, and the record herein, this Court concludes that the plaintiffs' motion for summary judgment [53] shall be GRANTED.

A separate order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on July 23, 2008.

21